**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAVELIN GLOBAL COMMODITIES (UK) LTD, <br><br> Plaintiff, <br><br> v. <br><br> MERIDA NATURAL RESOURCES LLC, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Index No. <br><br> **VERIFIED COMPLAINT** |

JAVELIN GLOBAL COMMODITIES (UK) LTD, ("Javelin") alleges for its Verified Complaint against MERIDA NATURAL RESOURCES LLC ("Merida") as follows:

## SUMMARY

Merida granted liens in its property to secure its principal's now $7-plus million debts to Javelin pursuant to a Guaranty and Security Agreement dated June 28, 2009.  Upon its principal's defaults on account of those debts, Javelin provided Merida with notice of those defaults and exercised its rights under a power of attorney granted in the Guaranty and Security Agreement to protect its interests in the collateral Merida granted to secure the debts.  Merida, however, ignored Javelin's exercise of the power of attorney, took affirmative action in contravention of the power of attorney, purported to compromise and appropriate for itself payments that comprise Javelin's collateral, and thereby caused a permanent deterioration in the value of the collateral Merida granted Javelin to secure the debts.  Since that time, Merida's principal has denied, in writing, the validity of the liens and the power of attorney it granted Javelin and its conduct threatens further action that will cause further deterioration in the value

of the collateral it granted Javelin to secure the debts.  By this action, Javelin seeks a declaratory judgment affirming the validity of its liens and the effectiveness of the power of attorney and injunctive relief preventing Merida from interfering with Javelin's exercise of the power of attorney and causing any further deterioration in the value of the collateral it granted to Javelin.

## PARTIES

1. Plaintiff Javelin Global Commodities (UK) Ltd is a United Kingdom limited company organized under the laws of England and Wales and having a place of business at 7 Howick Place, London SW1 P1BB, United Kingdom.

2. Defendant Merida Natural Resources, LLC is a Virginia limited liability company with its registered office located at 192 Summerfield Court, Suite 203, Roanoke, VA 24019.

## JURISDICTION AND VENUE

3. Javelin's claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq*.

4.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), as the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Merida submitted to the personal jurisdiction of this Court pursuant to the Guaranty and Security Agreement.  *See* Guaranty and Security Agreement dated June 28, 2019 (a true and correct copy of which is attached hereto as Exhibit A), §13.

6. Venue is proper in this District under 28 U.S.C. § 1391(b)(3) because Merida has consented to this Court's jurisdiction.  *See* Ex. A, §13.

7. Merida has waived any objection to venue in this District.  *See* Ex. A, §13.

8. An actual, present and justiciable controversy has arisen between the parties.  Merida's principal, Thomas M. Clarke, has denied the validity of the lien Merida granted Javelin in certain property, as well as the validity and enforceability of the power of attorney Merida granted

Javelin, and has taken affirmative steps in the name of Merida to contravene both. *See* Ex. L. Mr. Clarke's statements and other actions denying the validity of the liens and effectiveness of Javelin's power of attorney have caused and threaten to cause further injury to Javelin.

### FACTS

9. Merida's principal is Thomas M. Clarke.

10. Through a variety of companies Mr. Clarke formed and has owned and controlled, Mr. Clarke acquired coal mines and steel-related businesses in a series of transactions beginning in 2015.

11. Javelin, which has engaged in the business of the purchase, sale, and marketing of coal and steel since June 2015, entered into marketing and purchase and sale agreements with four companies Mr. Clarke formed, owned, and controlled—Quinsam Coal Corporation, a British Columbia coal mining company, in August 2017; Coking Coal Financing, LLC, a domestic coal mining company, in January 2019; and Epic Companies, LLC and Epic Alabama Recyclers, LLC, in February 2019.

12. Mr. Clarke also personally guaranteed the obligations of Quinsam Coal and the two Epic companies.

13. After those four companies ceased operating, Mr. Clarke agreed to take on the remaining liabilities of Quinsam Coal, Coking Coal Financing and the two Epic companies to Javelin, and Mr. Clarke and Javelin agreed to restructure the remaining obligations relating thereto in June 2019.

14. To that end, Mr. Clarke issued three separate promissory notes, one relating to each of the three sets of companies, each dated June 28, 2019:

    a. a Secured Promissory Note No. 1, in the principal amount of $1,383,662, relating to the remaining obligations under the Coking Coal agreements;

    b. a Secured Promissory Note No. 2, in the principal amount of $2,968,821, relating to the remaining obligations under the Quinsam agreements and guaranties; and

    c. a Secured Promissory Note No. 3, in the principal amount of $2,420,274, relating to the remaining obligations under the Epic agreements and guaranties (collectively, the "Notes"),

the aggregate principal amount of which totaled $6,772,757. True and correct copies of the Notes, as modified by separate allonges dated December 3, 2019, are attached hereto as Exhibits B, C, and D, respectively.

    15. In connection therewith, Merida (and certain other Clarke-related individuals and entities) entered into the Guaranty and Security Agreement, jointly and severally guaranteeing the full and punctual payment of Notes and other Guaranteed Obligations (as defined in the Guaranty and Security Agreement) and pledging, as collateral therefor, its interests in and to certain payments owing to Merida by AMCI Euro-Holdings B.V. ("AMCI") under a Share Purchase Agreement dated as of April 30, 2019 between Merida, as the assignee of the seller ERP Steel Works, LLC, and AMCI, the purchaser, of certain shares of stock in Conuma Coal Resources Limited. *See* Ex. A, §§ 2, 4. A copy of the Share Purchase Agreement is attached hereto as Exhibit E. The Guaranty and Security Agreement defines the Periodic Payments owing by AMCI to Merida under the Share Purchase Agreement as "the AMCI Conuma Periodic Payments." *See* Ex. A, § 1(b).

    16. Javelin properly perfected its security interest in the AMCI Conuma Periodic Payments by filing a UCC-1 financing statement with the Secretary of the Commonwealth's Office of the Commonwealth of Virginia, the state in which Merida is formed. A true and correct copy of the UCC-1 is attached hereto as Exhibit F.

17. In addition and as a corollary to the remedies associated with Javelin's security interests in the AMCI Conuma Periodic Payments, Merida (along with the other guarantors and grantors) also granted Javelin an irrevocable power of attorney and designated and appointed Javelin as its attorney-in-fact with authority to take a variety of actions designed to allow Javelin to protect its interest in the collateral Merida granted to it, including the right to demand, collect, settle, compromise and adjust, and give discharges and releases concerning the AMCI Conuma Periodic Payments, to commence and prosecute actions for the purposes of collecting the AMCI Conuma Periodic Payments, and enforcing any other right in respect thereof.  *See* Ex. A, § 4(a)(i) & (ii).

18. Mr. Clarke failed to pay interest due under the terms of each of the Notes on the September 15, 2019 due dates in the respective amounts of $30,270, $64,948.11, and $52,948.69.

19. In addition, Mr. Clarke failed to pay the principal and accrued and unpaid interest and other outstanding obligations on the September 30, 2019 maturity date of Secured Promissory Note No. 1.

20. The failure to pay interest on each of the Notes and the principal, accrued interest, and other obligations on Secured Promissory Note No. 1 at its stated maturity date constituted payment defaults under each of the Notes.  *See* Exs. B, C & D, §§ 5(a) & 5(f).

21. On October 8, 2019, Javelin provided notice of the payment defaults under each of the Notes and demanded immediate payment of $7,044,071 then due under the Notes.  A true and correct copy of Javelin's notice of default is attached hereto as Exhibit G.

22. Mr. Clarke did not pay such amounts within five business days after the provision of notice, thus giving rise to Events of Default under each of the Notes and the Guaranty and Security Agreement.  *See* Exs. B, C & D, §§ 5(a) & 5(f); Ex. A, § 1(j).

23. Shortly thereafter, AMCI failed to make its first quarterly AMCI Conuma Periodic Payment on the December 1, 2019 due date as required under the Share Purchase Agreement.

24. Although AMCI subsequently made the first quarterly AMCI Conuma Periodic Payment late on March 16, 2020, AMCI failed to make the second and third quarterly AMCI Conuma Periodic Payments due on March 1, 2020 and June 1, 2020 (together with the late December 1, 2019 payment, the "Defaulted Payments"), respectively, again as required under the Share Purchase Agreement.

25. By notice dated June 8, 2020, Javelin notified Merida of the still pending Events of Default under the Notes and the Guaranty and Security Agreement and of Javelin's exercise of the power of attorney under Section 4(g) of the Guaranty and Security Agreement specifically with respect to the AMCI Conuma Period Payments. A true and correct copy of Javelin's June 8, 2020 notice is attached hereto as Exhibit H.

26. The June 8, 2020 notice also directed Merida to cease and desist and refrain from taking any action with respect to the AMCI Conuma Periodic Payments, including any effort to negotiate any modification, amendment, settlement, or other resolution with respect to such payments, and from contacting or communicating in any way with AMCI with respect to the AMCI Conuma Periodic Payments. *See* Ex. H, pp. 1-2.

27. On June 29, 2020, Javelin, exercising its rights under the power of attorney, initiated an arbitration against AMCI on behalf of Merida under Article 4 of the Rules of Arbitration of the International Chamber of Commerce, as provided under Section 7.8 of the Share Purchase Agreement, asserting claims against AMCI for breach of the Share Purchase Agreement for failing to make the Defaulted Payments. A true and correct copy of the Request for Arbitration is attached hereto as Exhibit I.

28. Notwithstanding Javelin's exercise of its power of attorney, Javelin's cease and desist demand, and the commencement of the arbitration action against AMCI, Merida purported to enter into an agreement with AMCI on September 9, 2020, pursuant to which AMCI remitted $1,803,415.47 to Merida on account of its obligations to make the Defaulted Payments. A true and correct copy of the agreement between AMCI and Merida is attached hereto as Exhibit J.

29. Merida's purported agreement with AMCI significantly short-changed Merida on its actual claims against AMCI with respect to the Defaulted Payments, reduced the value of the AMCI Conuma Periodic Payments constituting part of Javelin's collateral, and, thus, the purported agreement harmed and damaged Javelin.

30. But, with Merida's purported agreement in hand, AMCI then filed its answer to the arbitration request, essentially moving to dismiss the arbitration on the grounds, among other things, that Merida had settled the arbitrable claims. *See* Respondent's Answer to the Request for Arbitration (a true and correct copy of which, without exhibits, is attached hereto as Exhibit K) at ¶ 2.

31. On September 16, 2020, Merida remitted $1,272,550.00 of the amounts paid by AMCI to its senior secured lender Bay Point Capital Partners as permitted under the prepayment provisions of the Notes.

32. Upon satisfying its obligation to Bay Point Capital Partners, Merida and Mr. Clarke were required to remit the remaining sum of $530,865.47 to Javelin in satisfaction of their obligations under the Notes and the Guaranty and Security Agreement. *See* Exs. B, C, & D, § 2(a)(i)(1).

33. However, Merida and Mr. Clarke have refused to remit the remaining $530,865.47 to Javelin, not only breaching the Notes and the Guaranty and Security Agreement but also causing further deterioration of Javelin's collateral.

34. On October 7, 2020, Mr. Clarke sent Javelin a letter challenging the effectiveness of the power of attorney and the validity of the security interests that Merida granted Javelin in the Guaranty and Security Agreement.  A true and correct copy of Mr. Clarke's October 7, 2020 letter is attached hereto as Exhibit L.

35. The next AMCI Conuma Periodic Payment is due on December 1, 2020.

36. Upon information and belief, and based upon Mr. Clarke's statements in the October 7, 2020 letter to Javelin, as well as Merida's previous actions that caused a permanent deterioration in the value of Javelin's collateral, Merida will again ignore the power of attorney, fail to take appropriate action against AMCI in respect of the AMCI Conuma Periodic Payments yet to come due, and again act in its and its principal's own interests with respect to any default on the part of AMCI and cause further deterioration in the value of the collateral securing Javelin's claim against Merida and Mr. Clarke.

### COUNT I
### DECLARATORY JUDGMENT
### POWER OF ATTORNEY

37. Javelin repeats and realleges paragraphs 1 through 36 hereof, as if fully set forth herein.

38. Under Section 4(g) of the Guaranty and Security Agreement, Merida granted Javelin an irrevocable power of attorney and designated and appointed Javelin as its attorney-in-fact with authority to take various actions designed to allow Javelin to protect its interest in the collateral Merida granted to it, including the right to demand, collect, settle, compromise and

adjust, and give discharges and releases concerning the AMCI Conuma Periodic Payments, to commence and prosecute any actions at any court for the purposes of collecting the AMCI Conuma Periodic Payments, and enforcing any other right in respect thereof.  *See* Ex. A, § 4(a)(i) & (ii).

39. Javelin properly exercised its power of attorney by notifying Merida of the existence and continuation of Events of Default under the Guaranty and Security Agreement and the exercise of the power of attorney and by subsequently initiating the arbitration action on Merida's behalf.

40. Merida ignored Javelin's exercise of the power of attorney and negotiated a purported agreement with AMCI that caused a deterioration in the value of Javelin's collateral and damage to Javelin.

41. In an October 7, 2020 letter to Javelin, Merida's principal disputed Javelin's right to exercise the power of attorney and its right to initiate the arbitration action in its name, thus creating an actual case or controversy within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201(a).

42. Mr. Clarke's letter threatens to subject Javelin to further deterioration in the value of its collateral.

43. Accordingly, under the Declaratory Judgment Act, 28 U.S.C. § 2201, this Court has the power to declare the rights and legal relations of Javelin and Merida with respect to Javelin's exercise of the power of attorney under the Guaranty and Security Agreement and affirm Javelin's exercise of the power of attorney.

## COUNT II
## DECLARATORY JUDGMENT
## VALIDITY OF LIENS MERIDA GRANTED JAVELIN

44. Javelin repeats and realleges paragraphs 1 through 43 hereof, as if fully set forth herein.

45. Under Section 4(a) of the Guaranty and Security Agreement, Merida granted Javelin a lien and security interest in the AMCI Conuma Periodic Payments.

46. Javelin properly perfected that lien and security interest by filing a UCC-1 financing statement with the Secretary of the Commonwealth's Office of the Commonwealth of Virginia.

47. In an October 7, 2020 letter to Javelin, Merida's principal disputed the validity of the security interest it granted to Javelin in the AMCI Conuma Periodic Payments.

48. Specifically, Merida's principal denies the validity of Javelin's lien on the basis that it violates an anti-assignment provision under the Share Purchase Agreement.

49. However, Section 4(a) of the Guaranty and Security Agreement expressly granted Javelin a lien and security interest in the AMCI Conuma Periodic payments and, therefore, created, at a minimum, an equitable lien in favor of Javelin.

50. Given Merida's principal's denial of the validity of Javelin's security interest in the AMCI Conuma Periodic Payments, an actual case or controversy within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201(a).

51. Accordingly, under the Declaratory Judgment Act, 28 U.S.C. § 2201, this Court has the power to declare the rights and legal relations of Javelin and Merida with respect to the security interest Merida granted to Javelin in the AMCI Conuma Periodic Payments under the Guaranty and Security Agreement and affirm the validity and enforceability of that security interest as against Merida.

## COUNT III
## INJUNCTIVE RELIEF

52. Javelin repeats and realleges paragraphs 1 through 51 hereof, as if fully set forth herein.

53. Merida willfully ignored and challenged Javelin's exercise of the power of attorney Merida granted it pursuant to the Guaranty and Security Agreement.

54. Merida's refusal to recognize the validity of the power of attorney already caused a permanent diminution in the value of the collateral security Javelin's claim against Merida.

55. Absent injunctive relief, Merida and its principal may take further action to diminish the value of Javelin's collateral.

## PRAYER FOR RELIEF

**WHEREFORE**, Javelin requests judgment as follows:

A. the entry of an Order declaring that Javelin validly exercised the power of attorney under the Guaranty and Security Agreement and may exercise the same to the exclusion of Merida;

B. the entry of an Order declaring that Javelin possesses a valid and enforceable security interest in the AMCI Conuma Periodic Payments, as and when made to or for the benefit of Merida, pursuant to the Guaranty and Security Agreement;

C. the entry of an injunction barring Merida and its principals and other representatives from interfering or taking any action inconsistent with Javelin's exercise of the power of attorney and other rights under the Guaranty and Security Agreement; and

      D.     granting Javelin such other and further relief as the Court deems just and proper.

DATED: October 26, 2020.

*[signature: Kevin W. Barrett]*

Kevin W. Barrett
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, WV 25301

       -and-

137 Betsy Brown Road
Port Chester, NY 10573
T: (304) 345-6555
F: (304) 342-1110
kbarrett@baileyglasser.com

*Attorneys for the Plaintiff*

## VERIFICATION

Spencer Bradley Sloan, being duly sworn, deposes and says that I am a Director of JAVELIN GLOBAL COMMODITIES (UK) LTD and have authorized the filing of this Verified complaint. I have reviewed the allegations made in the foregoing Verified Complaint. As to those allegations of which I have personal knowledge, I believe them to be true. As to those allegations of which I do not have personal knowledge, I rely upon my information and belief and I believe them to be true.

_____
Spencer Bradley Sloan

Sworn to and subscribed before me this 26 day of October 2020:



